IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. SARKAUSKAS, individually, and on behalf of the class defined herein, ) ) | | |
| Plaintiff, ) | | |
| vs. ) | No. | 07 CV 6258 |
| ) | | Judge Conlon |
| CREDIT LINE RECOVERY, INC. and ) MICHAEL D. WEIS, ) | | Magistrate Judge Nolan |
| Defendants. ) | | JURY DEMANDED |

### AFFIDAVIT OF MICHAEL D. WEIS

I, MICHAEL D. WEIS, state under oath that if I were called as a witness in this case, I would depose and state under oath the following:

1. I was born in 1945. I was admitted by the Illinois Supreme Court to the Illinois Bar in 1970. My license is in good standing.

2. I am the sole proprietor of the Law Offices of Michael D. Weis.

3. As part of my practice, I litigate the collection of commercial and consumer debt.

4. I was retained by Credit Line Recovery, Inc. ("CLR"), a business which purchases delinquent debts from credit card companies or through brokers.

5. I am not an employee of CLR. I am hired pursuant to an attorney-client agreement wherein I am paid a contingency fee and reimbursed for advanced costs.

6. Pursuant to this contract, I was retained by CLR to file suit against Michael A. Sarkauskas ("Sarkauskas").

EXHIBIT 2

7.      CLR provided me documentation showing that Sarkauskas opened a charge card account with Chase on or about October 11, 1995 and entered into a cardholder agreement attached to this Affidavit as **EXHIBIT "A"**.

8.      On or about June 2, 2005, Chase declared the account in default because Sarkauskas failed to pay one ore more of the minimum monthly payments as required by the cardholder agreement.

9.      Chase sold the account receivable to MDC Credit Corporation, a New York corporation.

10.     Thereafter, on June 20, 2006, the plaintiff, CLR, purchased the account from MDC Credit Corporation for good and valuable consideration, and became the owner thereof.

11.     CLR made demand on Sarkauskas to pay the balance and accumulated interest. Sarkauskas refused.

12.     On behalf of my client, CLR, I filed a Complaint in the Circuit Court of Cook County, Municipal Department, First District, Case No. 06 M1 155284 (**EXHIBIT "B"**).

13.     Pursuant to the cardholder agreement, CLR was seeking the principal balance, interest, reasonable costs and attorney's fees in the amount of $350.

14.     Sarkauskas retained the law firm, Edelman, Combs, Latturner & Goodwin, LLC.

15.     Sarkauskas did not dispute that the credit card agreement allowed CLR to collect reasonable attorney's fees and costs.  Rather, Sarkauskas contended that the did not incur the charges on the credit card.

16.     The case was tried to a bench trial on August 15, 2007.  The Court entered judgment in favor of Sarkauskas and against CLR.

17. Sarkauskas never claimed that the attorney's fees sought by CLR were improper or otherwise illegal.

18. In the present case, brought under the Fair Debt Collection Practices Act, Sarkauskas claims that CLR did not "incur" attorney's fees when it hired me to collect delinquent accounts alleging, *inter alia*, that there is a "substantial identity of interest" between CLR and me by virtue of the fact that my daughter, Heather Weis, owns CLR.

19. I have never been an employee of CLR. I do not participate in the profits of CLR. I am not a shareholder or otherwise "silent owner" of CLR. My only relation to CLR is by virtue of my attorney-client agreement.

*This concludes my Affidavit.*

                                                              _____
                                                              MICHAEL D. WEIS

SUBSCRIBED and SWORN to
before me this ___3RD___ day
of ___January___, 2008.

_____
Notary Public

[Notary seal: SUSAN G. WEIS, NOTARY PUBLIC OFFICIAL SEAL, STATE OF ILLINOIS, MY COMMISSION EXPIRES MARCH 13, 2011]

Daniel F. Konicek
Attorney No. 6205408
KONICEK & DILLON, P.C.
21 W. State St.
Geneva, IL 60134
(630) 262-9655
DFK/cfg (Affidavit of Michael Weis)

3

# CHASE CARDHOLDER AGREEMENT

**OHIO RESIDENTS.** The Ohio laws against [discrimin]ation require that all creditors make credit equally [available] to all creditworthy customers and that credit [reporting] agencies maintain separate credit histories on each [individual] upon request. The Ohio civil rights commission [administ]ers compliance with this law.

---

**[IN CAS]E OF ERRORS OR INQUIRIES ABOUT YOUR BILL**
**[B]ILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE**

[This] notice contains important information about your [rights an]d our responsibilities under the Fair Credit Billing [Act.]

[Notify Us] In Case of Errors or Questions About Your Bill

[If yo]u think your bill is wrong, or if you need more [informati]on about a transaction on your bill, write us on a [separate] sheet at the address listed on your bill after the [words] "Questions" or "Send Inquiries To:." Write to us no [later than] 60 days after we sent you the first bill on which the [error or p]roblem appeared. You can telephone us, but doing [so will n]ot preserve your rights.

[In y]our letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

[If you h]ave authorized us to pay your credit card bill [automatic]ally from your savings or checking account, you [can stop] the payment on any amount you think is wrong. To [stop the] payment your letter must reach us three business [days befo]re the automatic payment is scheduled to occur.

**[Your Rig]hts and Our Responsibilities After We Receive [Your Writ]ten Notice**

[We] must acknowledge your letter within 30 days, [unless we] have corrected the error by then. Within 90 days, [we must] either correct the error or explain why we believe [the bill w]as correct.

[After] we receive your letter, we cannot try to collect any [amount y]ou question, or report you as delinquent. We can.

13

continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obliged to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2001 Chase Manhattan Bank USA, N.A. All Rights Reserved.

14                          M-38756 2-01.

**MASTERCARD® and VISA®**
**CARDMEMBER AGREEMENT**

**GENERAL TERMS**

1. **Meaning of Words Used In This Agreement.** "Agreement" means this document and the Pricing Schedule (which may initially appear on your card carrier containing your credit card), as either may be amended from time to time. The numbered Boxes referenced in this Agreement are located in the Pricing Schedule. In this Agreement, "you," "your" or "yours" means each person who applied for the Visa or MasterCard Account. "We," "us" or "our" means Chase Manhattan Bank USA, National Association. "Account" means the Visa or MasterCard Account for which you were issued cards and checks imprinted with your Account number. "Authorized User" means any person to whom you have given permission to use your Account. "Card" means the Visa or MasterCard card(s) issued in connection with your Account. "Check" means Chase Convenience Checks. "ATM" means Automated Teller Machine. "Our check" means a check drawn on us or one of our affiliates. "Seller" means any merchant, insurance company or its agent or broker.

2. **Services of This Account.** This Account may be used for Purchases from any Seller that accepts the Card and for Advances. You agree not to make or permit to be made any illegal transactions on your Account through the use of a Card, a Check or any other manner.

3. **To Use Your Card.** You must sign the panel on the back of your Card. Authorized Users of any additional Card(s) should sign their names on the panel on the back of those Cards. For Purchases, you will have to sign a sales slip that has your name, the Seller's name, and your Account number on it, unless you let the Seller complete the sales slip for you.

4. **Your Responsibilities for This Account.** You are responsible for all amounts owed on this Account, whether charged by you, a person whom you permit to obtain credit on your Account (such as by lending a person your Card), or any other person using a Card or your Account with actual, implied or apparent authority. You agree that anyone who is issued a Card for your Account (or anyone to whom you lend or give your Card) is authorized to make charges to your Account to the same extent as you and we are not responsible for controlling such use of your Account. Such authority will continue until you revoke it by notifying us, obtaining the Card in your physical possession, and if it is a

1

EXHIBIT A

operational difficulties or, in our discretion, for any other appropriate reason.

Transactions made above a certain dollar amount may require authorization before the transaction is approved. The number of transactions you make in one day may be limited by us. This is done for security reasons, and as such, the details of how the authorization system works are not listed in this Agreement. Neither we nor our agents will be responsible if authorization for a transaction is not given. If your Account is overlimit or delinquent, credit authorization for transactions may be declined.

14. **Monthly Statements.** Each month there is a debit or credit balance of more than $1, or a Finance Charge has been imposed on your Account, we will mail you a statement.

15. **Sales Slip or Duplicate Statement Fee.** You will be charged the fee disclosed in Box 10 for each original or copied sales slip and duplicate statement you request. The fee is not owed if a request for such a document reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

16. **Billing Errors.** If you have a dispute about your Account, notify us as soon as possible. Please read the notice "In Case of Errors or Inquiries About Your Bill." This notice explains your legal rights about billing errors and defenses under Federal Law and how you must notify us. If any adjustment is made, we will credit your Account.

17. **Currency Conversion.** If you effect a transaction with your MasterCard card or Visa card in a currency other than U.S. dollars, MasterCard International Incorporated or Visa International, as appropriate, will convert the charge into a U.S. dollar amount. MasterCard International or Visa International will use its conversion procedure, which is disclosed to institutions that issue MasterCard cards or Visa cards, respectively. Currently, the currency conversion rate used by MasterCard International or Visa International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International or Visa International, as appropriate, for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International and Visa International, respectively. The currency conversion rate used by MasterCard International or Visa International on the date your transaction is processed by MasterCard International or Visa International may differ from the rate that would have been used on the purchase or transaction date or the cardholder

4

you will still owe any remaining balance. We may refuse to accept any such check by returning it to you, not cashing it or by destroying it. All other payments should be sent to the regular payment address shown on your monthly statements.

9. **Returned Payment Fee.** You will be charged the fee disclosed in Box 10 for each check or payment instrument given in payment which is returned to us of which we cannot process under our normal operating procedures.

10. **Minimum Payment.** You may pay either the Minimum Payment or any amount over that up to the New Balance. Your Minimum Payment must be in accordance with our payment Instructions and received by the time of day on the Payment Due Date shown on your statement. Your Minimum Payment is calculated by taking the New Balance and deducting any amounts which you have properly notified us are in dispute (see notice "In Case of Errors or Inquiries About Your Bill") and multiplying that amount by two percent (2%). If the resulting amount is more than $10, it will be reduced to the next lowest dollar. If the resulting amount is less than $10, it will be increased to $10. To this amount we add any Past Due Amounts and, at our option, any amounts in excess of your credit line. The Minimum Payment will never be more than the New Balance.

11. **Late Payment Fee/Charge.** There will be a Late Payment Fee/Charge in the amount disclosed in Box 10 if we do not receive in accordance with our payment instructions the Minimum Payment by the time of day on the Payment Due Date shown on your monthly statement.

12. **If Your Cards or Checks are Lost or Stolen.** If someone used your Card(s) or Checks without your permission or if they are lost or stolen, contact us immediately. You may call or write. Call toll free 1-800-441-7681 anytime from all 50 states, Washington, D.C., Puerto Rico, and the U.S. Virgin Islands. For all other locations call 813-884-2997 collect. Write to: P.O. Box 15919, Wilmington, DE 19850-5919. You may be liable for the unauthorized use of your Card(s) in an amount not to exceed $50 in any case where your Card(s) are lost or stolen and you fail to contact us within twenty-four (24) hours. You will not be liable for such unauthorized use if you contact us in the manner described immediately above within the twenty-four (24) hour time limit or before the unauthorized use occurs.

13. **If Your Card or Check is Refused.** We are not responsible if a Seller, Bank or ATM refuses to honor your Card or Check. Although you may have credit available, we may not authorize credit for a particular transaction due to

3

Card issued to an Authorized User, by also cutting it in half. If you receive a benefit from the use of your Card or Account by another person, such use will not be considered unauthorized. We may require Authorized Users to repay the amount owed for the charges they make.

5. **Your Credit Line.** Your credit line is the most you may owe on your Account at any time. You will be told the amount of your credit line. You may not use your Account in any way that would cause you to go over your credit line. You may also be asked to immediately pay for any amount over your credit line. We may change your credit line or separate the amount of your credit line into available credit for Purchases and Advances. If the credit line is changed or limited, you will be notified.

6. **Overlimit Fee.** If your Account balance (including any Finance Charges and any fees and charges owed on your Account) is over your credit line at the end of a billing cycle, there will be an Overlimit Fee as disclosed in Box 10. This fee will be imposed only once during the billing cycle, but will be imposed in each billing cycle that you are over your credit line even if we authorize the transaction which causes your credit line to be exceeded.

7. **Annual Fee.** If there is an Annual Fee for the Account, you will be billed the Annual Fee disclosed in Box 7 whether or not you have used the Account. If your Annual Fee has been waived, it will be billed when the waiver period has ended, and will then continue to be billed on an annual basis. The Annual Fee is non-refundable.

8. **Payments.** All payments must be made and received by us in accordance with the payment instructions that appear on or with your monthly statements and accompanying envelopes. Payments must be in United States Dollars and drawn on a United States financial institution or the United States Postal Service. In our sole discretion we will decide how to apply your payments. Although we post your payments as of the business day we receive them as described on your statements, your Total Available Credit may not be restored for up to 15 days after we post your payment. Any payment check which you send us for less than the full balance due that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such checks. For example, if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and

2

## TERMS FOR ADVANCES

1. **Advances.** An Advance is a cash loan or similar transaction. You may take an Advance as follows. 1) Using your Checks. These Checks may only be used by the person(s) whose names are pre-printed on the Checks. We will not certify these Checks. 2) Using any of our ATM's or any ATM, which may be provided for your use by another financial institution or company. 3) Using a Cash Advance slip. Cash Advance slips may be obtained from any of our branches or from any bank that accepts the Card. 4) Using the official check mailed to you in response to your request. 5) Using any other service that may be connected to your savings or checking accounts, which may be offered by us, that allows you to take Advances on this Account. 6) Entering into transactions that involve the purchase of items convertible to cash or similar transactions, which we may treat as Advances, including but not limited to wire transfers, money orders, travelers checques, gaming transactions, and tax payments. Advances may also be referred to as Cash Advances or Cash.

2. **Declined Check Fee.** You will be charged the fee disclosed in Box 10 for each Check or Balance Transfer check issued which cannot be processed because you are over your credit line, or would be if such check were processed, or your Account is delinquent or closed.

3. **Stop Payment Fee.** You will be charged the fee disclosed in Box 10 for each request you make for us to stop payment on a Check or other form of Advance we make on your behalf or to cancel a stop payment request. You must provide us with any information we reasonably require in order to process your stop payment or cancellation request. We do not have to honor any stop payment or cancellation request unless we have a reasonable opportunity to act on it before the Check or other form of Advance is paid or approved for payment. We will not be liable in any way for any stop payment or cancellation request that we honor or fail to honor if we used ordinary care.

4. **Limits on Advances.** For Advances taken from an ATM, there is a limit for each transaction and a daily limit that you may obtain.

5. **Service Charge/Transaction Fee for Advances.** For each Advance, there will be a Transaction Fee as disclosed in Box 9. Any minimum and maximum Transaction Fees are also disclosed in Box 9. The total amount of Transaction Fees will be shown in the descriptive portion of your statement. Transaction Fees are part of the Finance Charge. The addition of Transaction Fees may cause the Annual

6

statement posting date. The adjustment factor that is part of the currency conversion rate is one percent, but may be changed from time to time by MasterCard International or Visa International, respectively. For each transaction in a foreign currency, we will charge a foreign transaction fee of two percent (2%) of the converted transaction amount. This fee may be abbreviated as "For. Tran. Fee." For each such transaction converted into a U.S. Dollar amount that must be converted back into a foreign currency because of a refund or other reversal of the transaction, the same currency conversion rate formula and procedures will be used.

18. **Authorization to Provide Information.** You authorize us to provide certain information on you and your Account to our affiliates and others, including any company whose name or mark may appear on the Cards. Complete details regarding our rights to share information and your right to opt-out of certain information being shared is provided to you when you first receive an Agreement and at least once each calendar year thereafter.

19. **Disputing Account Information Reported to Credit Bureaus.** We furnish information about your Account to credit bureaus. You have the right to dispute the accuracy of the information reported by writing us at P.O. Box 15823, Wilmington, DE 19850-5823.

20. **Changing the Terms of This Agreement.** We may change any of the terms of this Agreement, including without limitation by adding new terms or by deleting or modifying existing terms. We will notify you of any such changes as required by law. Any changes to this Agreement can apply to all outstanding unpaid indebtedness and any new transactions on your Account. We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned.

21. **Default and Collection Costs.** Your Account will be in default and we can require that the total outstanding balance be paid if: (1) you fail to pay any amount owed under this Agreement when due; (2) you exceed the credit limit in effect on your Account; (3) you do not follow the terms of this Agreement; (4) your ability to pay us is materially impaired (including, but not limited to, bankruptcy or insolvency proceedings that are initiated by or against you); or (5) you default on any other loan or credit obligation you have with us or another creditor. We do not have to notify you or demand payment in order to take this action. If you are in default, we may, as permitted by law: cancel your credit privileges and require you to pay the unpaid balance immediately; require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your Account to be six or more billing cycles past due; and require you to pay reasonable attorney's fees, any court costs and other collection costs incurred by us in the collection of any amounts you owe under this Agreement.

22. **Cancellation.** We may close your Account at any time. You will be responsible for repaying any Purchases, Advances or other outstanding charges that are still due on your Account. Your Card is issued as a way of letting you use your Account. It may not be transferred. If we request the Card(s), you must return them. Any services not described in this Agreement that may be provided from time to time in connection with the Account are not part of this Agreement and may be changed or cancelled at any time without notice or refund.

23. **Governing Law. This Agreement is governed by the laws of the United States and the State of Delaware. Any dispute concerning any item in this Agreement will be resolved by those laws.**

24. **Telephone Monitoring.** You agree that your telephone communications with us may be monitored and recorded to improve customer service and security.

25. **Delayed Enforcement.** We may delay, enforcing or not enforce any of our rights under this Agreement without losing any of them.

26. **Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

## SPECIAL RATES

1. **Special Rates.** From time to time, we may offer you special Periodic Rates and terms on your Account, either for balance transfer transactions using special checks or other written request forms we provide or verbal requests for such transfers which we agree to honor (referred to as "Balance Transfers" for purposes of this Agreement) or for other offers on your Account such as introductory, promotional or other reduced rate offers. If we do, we will advise you of the special rates, how long they will be in effect, the balances to which they will apply, and the rates that will apply after the special rates expire. The terms of this Agreement apply to any such special rates. If a special rate is variable, then the "Variable Rate" terms of this Agreement (including the Pricing Schedule) will apply. You may lose any special rate that is offered you and regular/standard Preferred Pricing will apply, if you fail to make any required minimum payment by the Payment Due Date. You may lose regular/standard Preferred Pricing and Non-Preferred Pricing will apply, if you fail to meet the conditions of the "Preferred Customer Pricing Eligibility" section of this Agreement.

2. **Balance Transfer Transactions.** Balance Transfer transactions are treated as Purchases except as noted in this Agreement. These transactions will not be eligible for the grace period for Purchases, except as stated in the terms of any Balance Transfer offer made to you. We may identify Balance Transfers and the related promotional balances by different terms such as "Transferred Balance" or "Balance Transfer." If the special rates stated in an offer will apply only to Purchase or Advance balances dated on or after the date the Balance Transfer transaction is posted to your Account, we may identify such promotional balances as "Current Purchases" or "Current Advances." All other Purchases or Advances in such an offer may be identified as "Prior Purchases" or "Prior Advances," and will be subject to the same terms in effect when you accepted our offer. If the Periodic Rate for a Balance Transfer transaction is the same as the Periodic Rate for another balance on your Account (including, but not limited to, when any special rate from a Balance Transfer transaction expires), we may combine the Balance Transfer balances with other balances on your Account and refer to those combined balances using other terms such as Purchases or Advances. If a check or other form of transfer for a Balance Transfer transaction is used to pay any amounts you owe to any JP Morgan Chase bank or company, is made payable to cash, is received by us and posted to your Account after the expiration date of the offer, is otherwise used in a way that does not transfer balances you owe to other creditors to your Account, or is used in any way not specified in the promotional offer we make you, we reserve the right to refuse to honor that Balance Transfer transaction or to treat it as an Advance.

3. **Transaction Fee for Balance Transfer Transactions.** For each Balance Transfer transaction described in any offer we make to you, we may charge a Transaction Fee FINANCE CHARGE in the amount disclosed in Box 9. This fee may be reduced in our sole discretion in any offer we make to you. Transaction Fees are part of the Finance Charge. The addition of Balance Transfer Transaction Fees may cause the Annual Percentage Rate for Balance Transfer transactions to exceed the nominal Annual Percentage Rate shown on your statement.

Percentage Rate on Advances to exceed the nominal Annual Percentage Rate shown on your statement.

**6. Our Responsibilities to Honor Checks.** We may not accept your checks if: 1) by paying a Check or our check you would go over your credit line; 2) your Check or payment check is postdated; 3) your Cards or Checks have been reported lost or stolen; 4) your Account has been cancelled or has expired. If a postdated check is paid and as a result any other check is returned or not paid, we are not responsible. You may not use a Check to pay any amount you owe under this Agreement.

## TERMS FOR PURCHASES

You may use your Account to purchase or lease goods and services or for lodging services when making guaranteed reservations or advance deposits.

## TERMS FOR BALANCE TRANSFERS, ADVANCES AND PURCHASES

**1. Calculation of Finance Charge for Balance Transfers, Advances and Purchases.** That portion of the Finance Charge which is determined by using the daily Periodic Rate is calculated separately for Balance Transfers, Advances and Purchases, but using the same method (generally known as the "average daily balance, including new transactions" method). Separate average daily balances (which may be referred to as "Finance Charge Balances") are calculated for Balance Transfers, Advances and Purchases, and each such balance is multiplied by the applicable daily Periodic Rate. Subject to the grace period for Purchases described below, Finance Charges accrue on Purchase, Advance and Balance Transfer transactions and fees beginning on the date the transaction occurs or on the first day of the billing cycle it is received by us (whichever is later), or, at our option, the date the transaction is posted to your Account. Finance Charges continue to accrue until payment in full is received.

We determine each of the average daily balances as follows. For each day in the billing cycle, we take that day's beginning balance for Balance Transfers, Advances and Purchases (an amount that includes accrued and/or unpaid Finance Charges, fees and other charges from previous billing cycles) and add any new Balance Transfers, Advances, Purchases, or other debits to the appropriate balance. We also add to each such balance an amount equal to the previous day's ending balance of Balance Transfers, Advances or Purchases multiplied by the applicable daily

9

Periodic Rate (or if more than one rate could apply depending on the average daily balance reaching a certain level, the lowest applicable rate). We then subtract from the appropriate balance any payments or credits posted that day. This gives us the daily balances for Balance Transfers, Advances and Purchases. We then add all of the daily balances separately for Balance Transfers, Advances and Purchases (excluding days which end with a credit balance), and divide each sum by the number of days in the billing cycle. This gives us the average daily balances for Balance Transfers, Advances and Purchases. All fees charged to your Account are added to the appropriate Purchase balance, except for any Transaction Fee which is added to the appropriate Purchase, Advance or Balance Transfer balance. This Agreement provides for the compounding of Finance Charges.

Then we multiply each average daily balance by the applicable daily Periodic Rate, and then by the number of days in the billing cycle. The daily Periodic Rate will equal 1/365th of the Annual Percentage Rate. The daily Periodic Rate and Annual Percentage Rate are disclosed in the applicable portion of the Pricing Schedule, as may be amended from time to time. These **FINANCE CHARGES** determined by Periodic Rate for Balance Transfers, Advances and Purchases are added to any Transaction Fees to get the combined amount of **FINANCE CHARGE** shown on your monthly statement. For Purchases only, there is a minimum **FINANCE CHARGE** of fifty cents ($.50) if a Finance Charge for Purchases is imposed.

There will not be a periodic rate Finance Charge on Purchases if we receive payment for the "New Balance" by the time of day on the "Payment Due Date" shown on the monthly statement. (This is known as the "grace period.") You may also avoid Finance Charges for new Purchases for the first billing cycle in which they are posted to your Account if that cycle began with a "Previous Balance" of zero or the "Previous Balance" is reduced to zero by credits or payments we receive by the time of day on the "Payment Due Date" shown on your previous monthly statement. Payments must be in accordance with our payment instructions. There is no grace period for Balance Transfers unless the terms of the Balance Transfer offer state there will be a grace period, and for Advances.

2. **Periodic Rate.** The daily Periodic Rates applied to the Balance Transfers, Purchases and Advances average daily balances and the corresponding **ANNUAL PERCENTAGE RATES** are in the Pricing Schedule. Where the Pricing Schedule includes "Variable Rate Index and Margin"

information for a particular rate that applies to your Account, that rate is a variable rate and the disclosure below regarding variable rates apply for that rate. Where the Pricing Schedule does not include such "Variable Rate Index and Margin" information for any particular rate (as indicated by an "N/A" for "not applicable" or the absence of such information in the Pricing Schedule), that rate is fixed and the disclosures below regarding variable rates do not apply. Further, for any particular rate in the Pricing Schedule that is preceded by the terms "Preferred" or "Non-Preferred", that rate is subject to the "Preferred Customer Pricing Eligibility" section that appears below. When your Account satisfies the "Preferred Customer Pricing" conditions, the "Preferred" rates apply; when it does not, the "Non-Preferred" rates apply.

3. **Variable Rates.** If the daily Periodic Rate and corresponding **ANNUAL PERCENTAGE RATE** that apply to your Account are variable rates (see Pricing Schedule), they may increase or decrease from one billing cycle to another. These rates are based on the value of an index (the "Index") to which we add a margin. The Index and margin are in the Pricing Schedule. The Index plus the margin determine the nominal **ANNUAL PERCENTAGE RATE**.

If the Index is not published on the relevant date, the Index we use in setting the daily Periodic Rate for Purchases and/or Advances on your Account will be the Prime Rate published in *The New York Times* or any other newspaper of national circulation selected by us. For purposes of this Agreement, the Index is merely a pricing index. It is not, and should not be considered by you to represent, the lowest or the best interest rate available to a borrower at any particular bank at any given time.

The daily Periodic Rate for Balance Transfers, Purchases and/or Advances increases when the Index increases on the relevant date, and decreases when the Index decreases on the relevant date. An increase in the rate may cause you to pay a larger Finance Charge and a higher minimum monthly payment. A decrease in the rate may cause you to pay a smaller Finance Charge and a lower minimum monthly payment. Any limit on the amount by which the daily Periodic Rate and the corresponding Annual Percentage Rate may change at any one time or over the life of your Account is set forth in the Pricing Schedule. If no limit appears for any particular rate, then that rate has no limit by which it may change.

4. **Preferred Customer Pricing Eligibility.** If "Preferred" and "Non-Preferred" rates appear in the Pricing Schedule, this section applies to your Account. Your Account will be

reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rate and impose a Non-Preferred rate up to the maximum Non-Preferred rate described on the Pricing Schedule for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in pricing as a result of the monthly reviews for Preferred or Non-Preferred rates will apply to existing as well as new balances and will be effective with the billing cycle ending on the review date.

To keep Preferred rates, the following conditions must be met as of the review date:

- you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; and

- the credit limit on your Account has not been exceeded; and

- any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, Non-Preferred rates will apply as described in this section. When we review your Account in subsequent monthly reviews, we may determine to charge a reduced Non-Preferred rate or even reinstate the Preferred rate if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment history and level of utilization over the life of your Account and your other relationships with us and our affiliates to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

**Consumer Reports.** We may obtain consumer credit reports from credit bureaus on you at any time to review your Account.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

| | |
|---|---|
| CREDIT LINE RECOVERY, INC. ) | |
| an Illinois Corporation ) | CASE NUMBER: 06M1155284 |
| ) | |
| PLAINTIFF, ) | CONTRACT |
| ) | AMOUNT CLAIMED: $12,331.23 |
| vs. ) | RETURN DAY: August 23, 2006 |
| ) | |
| MICHAEL A. SARKAUSKAS ) | |
| ) | |
| ) | |
| DEFENDANT ) | |

COMPLAINT

Now comes the Plaintiff, CREDIT LINE RECOVERY, INC. an Illinois Corporation, and complains of the defendant, MICHAEL A. SARKAUSKAS, and states as follows:

1. On or about October 11, 1995, the defendant, MICHAEL A. SARKAUSKAS, opened a charge card account with Chase pursuant to the "Cardholder Agreement" which is attached hereto and made a part hereof as plaintiff's exhibit "A".

2. Thereafter, the defendant, MICHAEL A. SARKAUSKAS, charged certain goods and/or services to the account under the terms of the aforesaid Cardholder Agreement.

3. On or about June 02, 2005, Chase declared the account in Default because the defendant, the defendant, MICHAEL A. SARKAUSKAS failed to pay one or more of the minimum monthly payments as required by the "Cardholder Agreement".

4. On or about December 30, 2005, Chase Bank, issued a statement of account to defendant, indicating a balance due as of that date, and a true and correct copy of that document is attached hereto and made a part hereof as plaintiff's exhibit "B"

5. Thereafter, Chase sold the aforesaid account receivable to MDC Credit Corporation, a New York Corporation, for good and valuable consideration, and MDC Credit Corporation, a New York Corporation became the owner of the account

6. On or about June 20, 2006, the plaintiff, Credit Line Recovery, Inc., an Illinois Corporation, purchased the aforesaid account from MDC Credit Corporation, a New York Corporation, for good and valuable consideration, and became the owner thereof.

7. Plaintiff attaches hereto as exhibit "C" and incorporates herein by this reference a recapitulation of the aforesaid chain of title of said account and the history of the aforesaid account.

8. On or about June 20, 2006, Credit Line Recovery, Inc., an Illinois Corporation, made demand upon the defendant, MICHAEL A. SARKAUSKAS, to pay the balance due for purchases and accumulated interest to the date, further demanding interest accumulating after the date of said demand.

9. The current amount due and owing plaintiff by defendant, MICHAEL A. SARKAUSKAS, is $11,981.23, no part of which has been paid plaintiff despite the aforesaid demand.

EXHIBIT B

10. Pursuant to the terms of the Cardholder Agreement, plaintiff is entitled to reasonable costs incurred in the collection of the delinquent account.

11. Pursuant to that agreement, plaintiff, Credit Line Recovery, Inc., has retained the Law Offices of Michael Davis Weis and Heather E. Weis LLC, an Illinois Corporation, to collect the claim plaintiff requests reasonable attorneys fees of $350.00

12. Therefore, the total amount due to plaintiff by defendant, MICHAEL A. SARKAUSKAS, is $12,331.23 + costs.

WHEREFORE the plaintiff, CREDIT LINE RECOVERY, INC. an Illinois Corporation, prays for judgment in plaintiff's favor and against the defendant, MICHAEL A. SARKAUSKAS, in the amount of $12,331.23 + costs.

Under penalties as provided by law pursuant to Illinois Code of Civil Procedure Section 1 - 109, the undersigned certifies as attorney and agent for plaintiff that statements set forth herein are true and correct based upon information and documentation furnished to me by plaintiff, Credit Line Recovery, Inc, Chase, and MDC Credit Corporation, a New York Corporation.

/s/ Michael D. Weis attorney for plaintiff

Michael D. Weis
Heather E Weis P C
Attorneys for Plaintiff
P.O. Box 1166
Northbrook, IL 60065
847-498-6868  Attorney code #: 21243                                                        S100

# CHASE CARDHOLDER AGREEMENT

**OHIO RESIDENTS.** The Ohio laws against [discrimin]ation require that all creditors make credit equally [available] to all creditworthy customers and that credit [reporting] agencies maintain separate credit histories on each [individual] upon request. The Ohio civil rights commission [administ]ers compliance with this law.

---

**[NOTIC]E OF ERRORS OR INQUIRIES ABOUT YOUR BILL [YOUR B]ILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE**

[This] notice contains important information about your [rights an]d our responsibilities under the Fair Credit Billing [Act.]

**[Notify U]s In Case of Errors or Questions About Your Bill**

[If y]ou think your bill is wrong, or if you need more [informat]ion about a transaction on your bill, write us on a [separate] sheet at the address listed on your bill after the [words "]Questions" or "Send Inquiries To:." Write to us no [later than] 60 days after we sent you the first bill on which the [problem appeared. You can telephone us, but doing [so will n]ot preserve your rights.

[In y]our letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

[If you h]ave authorized us to pay your credit card bill [automati]cally from your savings or checking account, you [can stop] the payment on any amount you think is wrong. To [stop the] payment your letter must reach us three business [days befo]re the automatic payment is scheduled to occur.

**[Your Rig]hts and Our Responsibilities After We Receive [Your Writ]ten Notice**

[We] must acknowledge your letter within 30 days, [unless we] have corrected the error by then. Within 90 days, [we must] either correct the error or explain why we believe [the bill w]as correct.

[After] we receive your letter, we cannot try to collect any [amount y]ou question, or report you as delinquent. We can

continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obliged to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2001 Chase Manhattan Bank USA, N.A. All Rights Reserved.

M-35756 2-01.

## MASTERCARD® and VISA® CARDMEMBER AGREEMENT

### GENERAL TERMS

**1. Meaning of Words Used in This Agreement.** "Agreement" means this document and the Pricing Schedule (which may initially appear on your card carrier containing your credit card), as either may be amended from time to time. The numbered Boxes referenced in this Agreement are located in the Pricing Schedule. In this Agreement, "you," "your" or "yours" means each person who applied for the Visa or MasterCard Account. "We," "us" or "our" means Chase Manhattan Bank USA, National Association. "Account" means the Visa or MasterCard Account for which you were issued cards and checks imprinted with your Account number. "Authorized User" means any person to whom you have given permission to use your Account. "Card" means the Visa or MasterCard card(s) issued in connection with your Account. "Check" means Chase Convenience Checks. "ATM" means Automated Teller Machine. "Our check" means a check drawn on us or one of our affiliates. "Seller" means any merchant, insurance company or its agent or broker.

**2. Services of This Account.** This Account may be used for Purchases from any Seller that accepts the Card and for Advances. You agree not to make or permit to be made any illegal transactions on your Account through the use of a Card, a Check or any other manner.

**3. To Use Your Card.** You must sign the panel on the back of your Card. Authorized Users of any additional Card(s) should sign their names on the panel on the back of those Cards. For Purchases, you will have to sign a sales slip that has your name, the Seller's name, and your Account number on it, unless you let the Seller complete the sales slip for you.

**4. Your Responsibilities for This Account.** You are responsible for all amounts owed on this Account, whether charged by you, a person whom you permit to obtain credit on your Account (such as by lending a person your Card), or any other person using a Card or your Account with actual, implied or apparent authority. You agree that anyone who is issued a Card for your Account (or anyone to whom you lend or give your Card) is authorized to make charges to your Account to the same extent as you and we are not responsible for controlling such use of your Account. Such authority will continue until you revoke it by notifying us, obtaining the Card in your physical possession, and if it is a

1



A

Card issued to an Authorized User, by also cutting it in half. If you receive a benefit from the use of your Card or Account by another person, such use will not be considered unauthorized. We may require Authorized Users to repay the amount owed for the charges they make.

**5. Your Credit Line.** Your credit line is the most you may owe on your Account at any time. You will be told the amount of your credit line. You may not use your Account in any way that would cause you to go over your credit line. You may also be asked to immediately pay for any amount over your credit line. We may change your credit line or separate the amount of your credit line into available credit for Purchases and Advances. If the credit line is changed or limited, you will be notified.

**6. Overlimit Fee.** If your Account balance (including any Finance Charges and any fees and charges owed on your Account) is over your credit line at the end of a billing cycle, there will be an Overlimit Fee as disclosed in Box 10. This fee will be imposed only once during the billing cycle, but will be imposed in each billing cycle that you are over your credit line even if we authorize the transaction which causes your credit line to be exceeded.

**7. Annual Fee.** If there is an Annual Fee for the Account, you will be billed the Annual Fee disclosed in Box 7 whether or not you have used the Account. If your Annual Fee has been waived, it will be billed when the waiver period has ended, and will then continue to be billed on an annual basis. The Annual Fee is non-refundable.

**8. Payments.** All payments must be made and received by us in accordance with the payment instructions that appear on or with your monthly statements and accompanying envelopes. Payments must be in United States Dollars and drawn on a United States financial institution or the United States Postal Service. In our sole discretion we will decide how to apply your payments. Although we post your payments as of the business day we receive them as described on your statements, your Total Available Credit may not be restored for up to 15 days after we post your payment. Any payment check which you send us for less than the full balance due that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such checks. For example, if it is determined there is no valid dispute or if any such check is received at any other address, we may accept the check and

you will still owe any remaining balance. We may refuse to accept any such check by returning it to you, not cashing it or by destroying it. All other payments should be sent to the regular payment address shown on your monthly statements.

**9. Returned Payment Fee.** You will be charged the fee disclosed in Box 10 for each check or payment instrument given in payment which is returned to us or which we cannot process under our normal operating procedures.

**10. Minimum Payment.** You may pay either the Minimum Payment or any amount over that up to the New Balance. Your Minimum Payment must be in accordance with our payment instructions and received by the time of day on the Payment Due Date shown on your statement. Your Minimum Payment is calculated by taking the New Balance and deducting any amounts which you have properly notified us are in dispute (see notice "In Case of Errors or Inquiries About Your Bill") and multiplying that amount by two percent (2%). If the resulting amount is more than $10, it will be reduced to the next lowest dollar. If the resulting amount is less than $10, it will be increased to $10. To this amount we add any Past Due Amounts and, at our option, any amounts in excess of your credit line. The Minimum Payment will never be more than the New Balance.

**11. Late Payment Fee/Charge.** There will be a Late Payment Fee/Charge in the amount disclosed in Box 10 if we do not receive in accordance with our payment instructions the Minimum Payment by the time of day on the Payment Due Date shown on your monthly statement.

**12. If Your Cards or Checks are Lost or Stolen.** If someone used your Card(s) or Checks without your permission or if they are lost or stolen, contact us immediately. You may call or write. Call toll free 1-800-441-7681 anytime from all 50 states, Washington, D.C., Puerto Rico, and the U.S. Virgin Islands. For all other locations call 813-884-2997 collect. Write to: P.O. Box 15919, Wilmington, DE 19850-5919. You may be liable for the unauthorized use of your Card(s) in an amount not to exceed $50 in any case where your Card(s) are lost or stolen and you fail to contact us within twenty-four (24) hours. You will not be liable for such unauthorized use if you contact us in the manner described immediately above within the twenty-four (24) hour time limit or before the unauthorized use occurs.

**13. If Your Card or Check is Refused.** We are not responsible if a Seller, Bank or ATM refuses to honor your Card or Check. Although you may have credit available, we may not authorize credit for a particular transaction due to

operational difficulties or, in our discretion, for any other appropriate reason.

Transactions made above a certain dollar amount may require authorization before the transaction is approved. The number of transactions you make in one day may be limited by us. This is done for security reasons, and as such, the details of how the authorization system works are not listed in this Agreement. Neither we nor our agents will be responsible if authorization for a transaction is not given. If your Account is overlimit or delinquent, credit authorization for transactions may be declined.

**14. Monthly Statements.** Each month there is a debit or credit balance of more than $1, or a Finance Charge has been imposed on your Account, we will mail you a statement.

**15. Sales Slip or Duplicate Statement Fee.** You will be charged the fee disclosed in Box 10 for each original or copied sales slip and duplicate statement you request. The fee is not owed if a request for such a document reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

**16. Billing Errors.** If you have a dispute about your Account, notify us as soon as possible. Please read the notice "In Case of Errors or Inquiries About Your Bill." This notice explains your legal rights about billing errors and defenses under Federal Law and how you must notify us. If any adjustment is made, we will credit your Account.

**17. Currency Conversion.** If you effect a transaction with your MasterCard card or Visa card in a currency other than U.S. dollars, MasterCard International Incorporated or Visa International, as appropriate, will convert the charge into a U.S. dollar amount. MasterCard International or Visa International will use its conversion procedure, which is disclosed to institutions that issue MasterCard cards or Visa cards, respectively. Currently, the currency conversion rate used by MasterCard International or Visa International to determine the transaction amount in U.S. dollars for such transactions is generally either a government-mandated rate or a wholesale rate determined by MasterCard International or Visa International, as appropriate, for the processing cycle in which the transaction is processed, increased by an adjustment factor established from time to time by MasterCard International and Visa International, respectively. The currency conversion rate used by MasterCard International or Visa International on the date your transaction is processed by MasterCard International or Visa International may differ from the rate that would have been used on the purchase or transaction date or the cardholder

2　　　　　　　　　　　　　　　　3　　　　　　　　　　　　　　　　4

## TERMS FOR ADVANCES

1. **Advances.** An Advance is a cash loan or similar transaction. You may take an Advance as follows. 1) Using your Checks. These Checks may only be used by the person(s) whose names are pre-printed on the Checks. We will not certify these Checks. 2) Using any of our ATM's or any ATM, which may be provided for your use by another financial institution or company. 3) Using a Cash Advance slip. Cash Advance slips may be obtained from any of our branches or from any bank that accepts the Card. 4) Using the official check mailed to you in response to your request. 5) Using any other service that may be connected to your savings or checking accounts, which may be offered by us, that allows you to take Advances on this Account. 6) Entering into transactions that involve the purchase of items convertible to cash or similar transactions, which we may treat as Advances, including but not limited to wire transfers, money orders, travelers checques, gaming transactions, and tax payments. Advances may also be referred to as Cash Advances or Cash.

2. **Declined Check Fee.** You will be charged the fee disclosed in Box 10 for each Check or Balance Transfer check issued which cannot be processed because you are over your credit line, or would be if such check were processed, or your Account is delinquent or closed.

3. **Stop Payment Fee.** You will be charged the fee disclosed in Box 10 for each request you make for us to stop payment on a Check or other form of Advance we make on your behalf or to cancel a stop payment request. You must provide us with any information we reasonably require in order to process your stop payment or cancellation request. We do not have to honor any stop payment or cancellation request unless we have a reasonable opportunity to act on it before the Check or other form of Advance is paid or approved for payment. We will not be liable in any way for any stop payment or cancellation request that we honor or fail to honor if we used ordinary care.

4. **Limits on Advances.** For Advances taken from an ATM, there is a limit for each transaction and a daily limit that you may obtain.

5. **Service Charge/Transaction Fee for Advances.** For each Advance, there will be a Transaction Fee as disclosed in Box 9. Any minimum and maximum Transaction Fees are also disclosed in Box 9. The total amount of Transaction Fees will be shown in the descriptive portion of your statement. Transaction Fees are part of the Finance Charge. The addition of Transaction Fees may cause the Annual

8

statement posting date. The adjustment factor that is part of the currency conversion rate is one percent, but may be changed from time to time by MasterCard International or Visa International, respectively. For each transaction in a foreign currency, we will charge the converted transaction fee of two percent (2%) of the converted transaction amount. This fee may be abbreviated as "For. Tran. Fee." For each such transaction converted into a U.S. Dollar amount that must be converted back into a foreign currency because of a refund or other reversal of the transaction, the same currency conversion rate formula and procedures will be used.

18. **Authorization to Provide Information.** You authorize us to provide certain information on you and your Account to our affiliates and others, including any company whose name or mark may appear on the Cards. Complete details regarding our rights to share information and your right to opt-out of certain information being shared is provided to you when you first receive an Agreement and at least once each calendar year thereafter.

19. **Disputing Account Information Reported to Credit Bureaus.** We furnish information about your Account to credit bureaus. You have the right to dispute the accuracy of the information reported by writing us at P.O. Box 15823, Wilmington, DE 19850-5823.

20. **Changing the Terms of This Agreement.** We may change any of the terms of this Agreement, including without limitation by adding new terms or by deleting or modifying existing terms. We will notify you of any such changes as required by law. Any changes to this Agreement can apply to all outstanding unpaid indebtedness and any new transactions on your Account. We may sell or transfer your Account and any amounts owed on your Account to another person at any time. If we do, this Agreement will still be in effect and any successor will have our rights in this Agreement to the extent assigned.

21. **Default and Collection Costs.** Your Account will be in default and we can require that the total outstanding balance be paid if: (1) you fail to pay any amount owed under this Agreement when due; (2) you exceed the credit limit in effect on your Account; (3) you do not follow the terms of this Agreement; (4) your ability to pay us is materially impaired (including, but not limited to, bankruptcy or insolvency proceedings that are initiated by or against you); or (5) you default on any other loan or credit obligation you have with us or another creditor. We do not have to notify you or demand payment in order to take this action. If you are in default, we may, as permitted by law, cancel your credit privileges and require you to pay the unpaid balance immediately; require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your Account to be six or more billing cycles past due; and require you to pay reasonable attorneys' fees, any court costs and other collection costs incurred by us in the collection of any amounts you owe under this Agreement.

22. **Cancellation.** We may close your Account at any time. You will be responsible for repaying any Purchases, Advances or other outstanding charges that are still due on your Account. Your Card is issued as a way of letting you use your Account. It may not be transferred. If we request the Card(s), you must return them. Any services not described in this Agreement that may be provided from time to time in connection with the Account are not part of this Agreement and may be changed or cancelled at any time without notice or refund.

23. **Governing Law.** This Agreement is governed by the laws of the United States and the State of Delaware. Any dispute concerning any item in this Agreement will be resolved by those laws.

24. **Telephone Monitoring.** You agree that your telephone communications with us may be monitored and recorded to improve customer service and security.

25. **Delayed Enforcement.** We may delay enforcing or not enforce any of our rights under this Agreement without losing any of them.

26. **Severability.** The invalidity of any provision of this Agreement shall not affect the validity of any other provision.

## SPECIAL RATES

1. **Special Rates.** From time to time, we may offer you special Periodic Rates and terms on your Account, either for balance transfer transactions using special checks or other written request forms we provide or verbal requests for such transfers which we agree to honor (referred to as "Balance Transfers" for purposes of this Agreement) or for other offers on your Account such as introductory, promotional or other reduced rate offers. If we do, we will advise you of the special rates, how long they will be in effect, the balances to which they will apply, and the rates that will apply after the special rates expire. The terms of this Agreement apply to any such special rates. If a special rate is variable, then the "Variable Rate" terms of this Agreement (including the Pricing Schedule) will apply. You may lose any special rate that is offered you and regular/standard Preferred Pricing will apply, if you fail to make any required minimum payment by the Payment Due Date. You may lose regular/standard Preferred Pricing and Non-Preferred Pricing will apply, if you fail to meet the conditions of the "Preferred Customer Pricing Eligibility" section of this Agreement.

2. **Balance Transfer Transactions.** Balance Transfer transactions are treated as Purchases except as noted in this Agreement. These transactions will not be eligible for the grace period for Purchases, except as stated in the terms of any Balance Transfer offer made to you. We may identify Balance Transfers and the related promotional balances by different terms such as "Transferred Balance" or "Balance Transfer." If the special rates stated in an offer will apply only to Purchase or Advance balances dated on or after the date the Balance Transfer transaction is posted to your Account, we may identify such promotional balances as "Current Purchases" or "Current Advances." All other Purchases or Advances in such an offer may be identified as "Prior Purchases" or "Prior Advances," and will be subject to the same terms in effect when you accepted our offer. If the Periodic Rate for a Balance Transfer transaction is the same as the Periodic Rate for another balance on your Account (including, but not limited to, when any special rate from a Balance Transfer transaction expires), we may combine the Balance Transfer balances with other balances on your Account and refer to those combined balances using other terms such as Purchases or Advances. If a check or other form of transfer for a Balance Transfer transaction is used to pay any amounts you owe to any JP Morgan Chase bank or company, is made payable to cash, is received by us and posted to your Account after the expiration date of the offer, is otherwise used in a way that does not transfer balances you owe to other creditors to your Account, or is used in any way not specified in the promotional offer we make you, we reserve the right to refuse to honor that Balance Transfer transaction or to treat it as an Advance.

3. **Transaction Fee for Balance Transfer Transactions.** For each Balance Transfer transaction described in any offer we may make to you, we may charge a Transaction Fee FINANCE CHARGE in the amount disclosed in Box 9. This fee may be reduced in our sole discretion in any offer we make to you. Transaction Fees are part of the Finance Charge. The addition of Balance Transfer Transaction Fees may cause the Annual Percentage Rate for Balance Transfer transactions to exceed the nominal Annual Percentage Rate shown on your statement.

5

6

7

Percentage Rate on Advances to exceed the nominal Annual Percentage Rate shown on your statement.

6. **Our Responsibilities to Honor Checks.** We may not accept your checks if: 1) by paying a Check or our check you would go over your credit line; 2) your Check or payment check is postdated; 3) your Cards or Checks have been reported lost or stolen; 4) your Account has been cancelled or has expired. If a postdated check is paid and as a result any other check is returned or not paid, we are not responsible. You may not use a Check to pay any amount you owe under this Agreement.

## TERMS FOR PURCHASES

You may use your Account to purchase or lease goods and services or for lodging services when making guaranteed reservations or advance deposits.

## TERMS FOR BALANCE TRANSFERS, ADVANCES AND PURCHASES

1. **Calculation of Finance Charge for Balance Transfers, Advances and Purchases.** That portion of the Finance Charge which is determined by using the daily Periodic Rate is calculated separately for Balance Transfers, Advances and Purchases, but using the same method (generally known as the "average daily balance, including new transactions" method). Separate average daily balances (which may be referred to as "Finance Charge Balances") are calculated for Balance Transfers, Advances and Purchases, and each such balance is multiplied by the applicable daily Periodic Rate. Subject to the grace period for Purchases described below, Finance Charges accrue on Purchase, Advance and Balance Transfer transactions and fees beginning on the date the transaction occurs or on the first day of the billing cycle it is received by us (whichever is later), or, at our option, the date the transaction is posted to your Account. Finance Charges continue to accrue until payment in full is received.

We determine each of the average daily balances as follows. For each day in the billing cycle, we take that day's beginning balance for Balance Transfers, Advances and Purchases (an amount that includes accrued and/or unpaid Finance Charges, fees and other charges from previous billing cycles) and add any new Balance Transfers, Advances, Purchases, or other debits to the appropriate balance. We also add to each such balance an amount equal to the previous day's ending balance of Balance Transfers, Advances or Purchases multiplied by the applicable daily

9

Periodic Rate (or if more than one rate could apply depending on the average daily balance reaching a certain level, the lowest applicable rate). We then subtract from the appropriate balance any payments or credits posted that day. This gives us the daily balances for Balance Transfers, Advances and Purchases. We then add all of the daily balances separately for Balance Transfers, Advances and Purchases (excluding days which end with a credit balance), and divide each sum by the number of days in the billing cycle. This gives us the average daily balances for Balance Transfers, Advances and Purchases. All fees charged to your Account are added to the appropriate Purchase balance, except for any Transaction Fee which is added to the appropriate Purchase, Advance or Balance Transfer balance. This Agreement provides for the compounding of Finance Charges.

Then we multiply each average daily balance by the applicable daily Periodic Rate, and then by the number of days in the billing cycle. The daily Periodic Rate will equal 1/365th of the Annual Percentage Rate. The daily Periodic Rate and Annual Percentage Rate are disclosed in the applicable portion of the Pricing Schedule, as may be amended from time to time. These FINANCE CHARGES determined by Periodic Rate for Balance Transfers, Advances and Purchases are added to any Transaction Fees to get the combined amount of FINANCE CHARGE shown on your monthly statement. For Purchases only, there is a minimum FINANCE CHARGE of fifty cents ($.50) if a Finance Charge for Purchases is imposed.

There will not be a periodic rate Finance Charge on Purchases if we receive payment for the "New Balance" by the time of day on the "Payment Due Date" shown on the monthly statement. (This is known as the "grace period.") You may also avoid Finance Charges for new Purchases for the first billing cycle in which they are posted to your Account if that cycle began with a "Previous Balance" of zero or the "Previous Balance" is reduced to zero by credits or payments we receive by the time of day on the "Payment Due Date" shown on your previous monthly statement. Payments must be in accordance with our payment instructions. There is no grace period for Balance Transfers unless the terms of the Balance Transfer offer state there will be a grace period, and for Advances.

2. **Periodic Rate.** The daily Periodic Rates applied to the Balance Transfers, Purchases and Advances average daily balances and the corresponding ANNUAL PERCENTAGE RATES are in the Pricing Schedule. Where the Pricing Schedule includes "Variable Rate Index and Margin"

information for a particular rate that applies to your Account, that rate is a variable rate and the disclosure below regarding variable rates apply for that rate. Where the Pricing Schedule does not include such "Variable Rate Index and Margin" information for any particular rate (as indicated by an "N/A" for "not applicable" or the absence of such information in the Pricing Schedule), that rate is fixed and the disclosures below regarding variable rates do not apply. Further, for any particular rate in the Pricing Schedule that is preceded by the terms "Preferred" or "Non-Preferred", that rate is subject to the "Preferred Customer Pricing Eligibility" section that appears below. When your Account satisfies the "Preferred Customer Pricing" conditions, the "Preferred" rates apply; when it does not, the "Non-Preferred" rates apply.

3. **Variable Rates.** If the daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE that apply to your Account are variable rates (see Pricing Schedule), they may increase or decrease from one billing cycle to another. These rates are based on the value of an index (the "Index") to which we add a margin. The Index and margin are in the Pricing Schedule. The Index plus the margin determine the nominal ANNUAL PERCENTAGE RATE.

If the Index is not published on the relevant date, the Index we use in setting the daily Periodic Rate for Purchases and/or Advances on your Account will be the Prime Rate published in *The New York Times* or any other newspaper of national circulation selected by us. For purposes of this Agreement, the Index is merely a pricing index. It is not, and should not be considered by you to represent, the lowest or the best interest rate available to a borrower at any particular bank at any given time.

The daily Periodic Rate for Balance Transfers, Purchases and/or Advances increases when the Index increases on the relevant date, and decreases when the Index decreases on the relevant date. An increase in the rate may cause you to pay a larger Finance Charge and a higher minimum monthly payment. A decrease in the rate may cause you to pay a smaller Finance Charge and a lower minimum monthly payment. Any limit on the amount by which the daily Periodic Rate and the corresponding Annual Percentage Rate may change at any one time or over the life of your Account is set forth in the Pricing Schedule. If no limit appears for any particular rate, then that rate has no limit by which it may change.

4. **Preferred Customer Pricing Eligibility.** If "Preferred" and "Non-Preferred" rates appear in the Pricing Schedule, this section applies to your Account. Your Account will be

reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rate and impose a Non-Preferred rate up to the maximum Non-Preferred rate described on the Pricing Schedule for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in pricing as a result of the monthly reviews for Preferred or Non-Preferred rates will apply to existing as well as new balances and will be effective with the billing cycle ending on the review date.

To keep Preferred rates, the following conditions must be met as of the review date:

- you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; and
- the credit limit on your Account has not been exceeded; and
- any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, Non-Preferred rates will apply as described in this section. When we review your Account in subsequent monthly reviews, we may determine to charge a reduced Non-Preferred rate or even reinstate the Preferred rate if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment history and level of utilization over the life of your Account, and your other relationships with us and our affiliates to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

**Consumer Reports.** We may obtain consumer credit reports from credit bureaus on you at any time to review your Account.

10

11

12

Statement for account number 5543 0768 4014 2940

| New Balance | Payment Due Date | Past Due Amount | Minimum Payment |
|---|---|---|---|
| $10,545.59 | 12/26/05 | $1,528.00 | $4,336.59 |

Amount Enclosed $ _____

Make your check payable to Chase Card Services.
New address or e-mail? Print on back.

**CHASE**

5543076840142940000433659010545590000009

00649 BEX 9 33505 C
MICHAEL A SARKAUSKAS
608 W 45TH ST
CHICAGO IL 60609-3419

CARDMEMBER SERVICE
PO BOX 15153
WILMINGTON DE 19886-5153

⑆500016028⑆ 956684014294008⑈

**CHASE**

Statement Date: 11/02/05 - 12/01/05
Payment Due Date: 12/26/05
Minimum Payment Due: $4,336.59

CUSTOMER SERVICE
In U.S. 1-800-436-7927
Español 1-888-446-3308
TDD 1-800-955-8060
Outside U.S. call collect
1-302-594-8200

**MASTERCARD ACCOUNT SUMMARY** Account Number: 5543 0768 4014 2940

| | | | |
|---|---|---|---|
| Previous Balance | $10,224.13 | Total Credit Line | $8,000 |
| Purchases, Cash, Debits | +$74.00 | Available Credit | $0 |
| Finance Charges | +$247.46 | Cash Access Line | $6,400 |
| New Balance | $10,545.59 | Available for Cash | $0 |

ACCOUNT INQUIRIES
P.O. Box 15298
Wilmington, DE 19850-5298

PAYMENT ADDRESS
P.O. Box 15153
Wilmington, DE 19886-5153

VISIT US AT:
www.chase.com/creditcards

### TRANSACTIONS

| Trans Date | Reference Number | Merchant Name or Transaction Description | Credit | Debit |
|---|---|---|---|---|
| 11/27 | | LATE FEE | | $39.00 |
| 11/02 | | OVERLIMIT FEE | | 35.00 |

### FINANCE CHARGES

| Category | Daily Periodic Rate 30 days in cycle | Corresponding APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee | FINANCE CHARGES |
|---|---|---|---|---|---|---|
| Purchases | V .07943% | 28.99% | $10,384.68 | $247.46 | $0.00 | $247.46 |
| Cash advances | V .07943% | 28.99% | $0.00 | $0.00 | $0.00 | $0.00 |
| Total finance charges | | | | | | $247.46 |

**Effective Annual Percentage Rate (APR):** 28.99%

Please see reverse side for balance computation method, grace period, and other important information.

The Corresponding APR is the rate of interest you pay when you carry a balance on any transaction category.
The Effective APR represents your total finance charges - including transaction fees
such as cash advance and balance transfer fees - expressed as a percentage.

### IMPORTANT NEWS

Pay today, log on to
www.chase.com/creditcards
It's fast, secure, and free!



**This Statement is a Facsimile - Not an original**

X 0000001 FIS33335 C 1      000 Y 9 01 05/12/01      Page 1 of 1      00225  MA MA 00649      33510000010000064901

# Credit Line Recovery, Inc.

Specializing in the Collection of Delinquent Receivables

Michael A. Sarkauskas
4029 S Maplewood Ave FL 1
Chicago, Il 60632

Card Issuer: Chase

| ACCOUNT NUMBER | 5543076840142940 |
|---|---|
| ACCOUNT OPEN DATE | October 11, 1995 |
| LAST DATE ANY PAYMENT MADE | June 02, 2005 |
| FIRST PLACEMENT | MDC CREDIT CORPORATION, a NY Corp |
| ACQUIRED BY CREDIT LINE RECOVERY, INC. | June 20, 2006 |
|  |  |
| STATEMENT BALANCE AS OF December 30, 2005 | $10,619.59 |
| DEFAULT INTEREST RATE | 24% |
| INTEREST ACCRUED TO DATE | $1,361.64 |
| CURRENT ACCOUNT BALANCE | $11,981.23 |
| ATTORNEYS FEES | $350.00 |

**TOTAL DUE: $12,331.23**

*Please remit all payments to:*
*Credit Line Recovery, Inc., Post Office Box 1166, Northbrook, Illinois 60065,*
*Telephone: 847 498 6868　　Fax: 847 498 9118*

